[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12744
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-23028-RNS

JULIO ANTONIO SILVA,
and all others similarly situated under 29 U.S.C. 216(b),

Plaintiff - Appellant,

versus

PRO TRANSPORT, INC.,
OSCAR ACHARANDIO,
TONY MENENDEZ,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 10, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Juan Antonio Silva appeals a district court order assessing sanctions against him and his attorneys. Silva sued his employer, Pro Transport, Inc., and its owners, Oscar Acharandio and Tony Menendez, to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19. The district court granted summary judgment to the defendants, concluding that judicial estoppel barred Silva's FLSA claim because he had failed to disclose it as an asset in his Chapter 13 bankruptcy. The district court then sanctioned Silva and his attorneys because it found that they acted in bad faith in litigating Silva's FLSA claim when it was clear under our precedent that judicial estoppel barred the claim. While Silva's appeal of the sanctions award was pending in our Court, we issued an en banc opinion clarifying the standard for applying judicial estoppel. *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc). Because *Slater* makes clear that Silva and his attorneys did not act in bad faith in litigating the FLSA claim, we reverse the district court's award of sanctions.

## I.    BACKGROUND

This dispute arises out of Silva's claim that Pro Transport failed to pay him overtime wages. Silva alleged that Pro Transport paid him for working only 40 hours per week, even though he was required to work 70 hours.

2

In 2014, Silva consulted with attorney Zandro Palma about his claim for unpaid overtime wages. Palma sent a letter to Pro Transport demanding payment on the ground that it had violated the FLSA by failing to pay Silva overtime wages. But when Pro Transport was unwilling to settle with Silva, Palma ceased representing Silva.

Later that year, Silva, facing foreclosure on his home, filed a petition for Chapter 13 bankruptcy. In the bankruptcy proceeding, Silva was represented by a different attorney. In the bankruptcy petition, Silva was required to disclose his assets. He failed to list his FLSA claim against Pro Transport and its owners as a contingent and unliquidated claim. In April 2015, the bankruptcy court confirmed Silva's Chapter 13 plan.

In August 2015, Silva's mother saw an advertisement by attorney J.H. Zidell. At his mother's urging, Silva met with Zidell about his potential claim for unpaid wages. At the meeting, Zidell had Silva complete an intake form that asked whether Silva had any pending legal matters. Silva did not identify his pending bankruptcy proceeding because he did not think that it was relevant. Zidell did not ask Silva in person whether he had any pending legal matters. After the meeting, Zidell filed this action on Silva's behalf. When the action was filed, Silva did not update his bankruptcy disclosures to reflect that he had filed the lawsuit.

The defendants in the FLSA action moved for summary judgment, asserting that judicial estoppel barred Silva's FLSA claim because he had taken inconsistent positions regarding the existence of that claim by bringing the civil action and failing to disclose the claim in his bankruptcy proceeding and because Silva acted with an intent to manipulate the judicial process. Regarding Silva's intent, the defendants relied on our precedent holding that a plaintiff who fails to disclose a civil claim in a bankruptcy proceeding acts intentionally because he has a motive to conceal the claim from his creditors to avoid having the proceeds from the lawsuit become the property of the bankruptcy estate.

In response to the summary judgment motion, Silva argued that judicial estoppel was unwarranted because he had never intended to manipulate or make a mockery of the judicial system; rather, he had merely made a mistake. Silva explained that due to his lack of sophistication he had not understood the importance of telling Ziddell about his bankruptcy proceeding or informing his bankruptcy counsel of his FLSA lawsuit. Silva also pointed out that he was attempting to correct the error by amending his bankruptcy disclosures, as was permitted under the bankruptcy rules. His bankruptcy attorney successfully amended Silva's bankruptcy schedules to disclose the pending FLSA claim as an asset.

4

The district court granted summary judgment to the defendants, finding that Silva had intended to make a mockery of the judicial system and concluding that judicial estoppel barred his FLSA claim.  The district court explained that under existing Circuit precedent Silva had acted intentionally because he had a motive to conceal his FLSA claim in his bankruptcy proceedings.  The district court dismissed as "insufficient," "irrelevant[,] and immaterial" Silva's attempt to correct the non-disclosure by amending his bankruptcy schedules.  Doc. 38 at 2.[1]

After the district court entered judgment in the defendants' favor, they moved for sanctions against Silva and his attorneys, seeking to recover their attorney's fees and costs.  They argued that the district court should award sanctions pursuant to its internal authority, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11 because Silva and his attorneys had acted unreasonably and in bad faith in litigating the FLSA claim when they knew or should have known that judicial estoppel barred the action.  Silva and his attorneys opposed the motion for sanctions, contending that they had a good faith basis for arguing that judicial estoppel should not apply, especially given that Silva amended his bankruptcy disclosures upon learning of the omission.

The district court referred the sanctions motion to a magistrate judge.  After a hearing, the magistrate judge recommended that the district court impose

---

[1] Citations to "Doc. #" refer to numbered entries on the district court's docket.

5

sanctions against Silva and his attorneys. The magistrate judge found that Silva and his attorneys had acted unreasonably and in bad faith in bringing the FLSA claim because "the case law in the Eleventh Circuit is clear that when a debtor fails to disclose a pending lawsuit to the bankruptcy court, while having knowledge of the lawsuit and a motive to conceal it, the doctrine of judicial estoppel bars the undisclosed action from proceeding." Doc. 61 at 14 (internal quotation marks omitted). The magistrate judge determined that Silva's attorneys had failed to perform an adequate investigation before filing the lawsuit. Although Zidell asked Silva on an intake form whether he had any other pending actions, the magistrate judge found that Zidell was required to ask Silva at their meeting whether he had any pending litigation or to search the PACER system to verify that Silva had no other pending federal actions.[2]

Although Silva and his attorneys objected to the magistrate judge's Report and Recommendation, the district court adopted it and granted the motion for sanctions. While the parties were litigating over the amount of the sanctions award, our Court agreed to rehear *Slater* en banc to address judicial estoppel in the context of a debtor's failure to disclose an asset in a Chapter 13 bankruptcy. Silva asked the district court to stay the case pending the en banc decision in *Slater*. The

---

[2] The magistrate judge also noted that Silva gave inconsistent testimony at the evidentiary hearing about whether his first attorney, Palma, told him that he had no overtime case and about the identity of the attorneys who represented him in his bankruptcy proceedings. But the magistrate judge did not rely on these inconsistencies to find that Silva acted in bad faith.

district court refused to stay the case and ultimately awarded the defendants

sanctions in the amount of $50,756 in attorney's fees and $445.43 in costs holding

Silva and his attorneys jointly and severally liable for the sanctions award.

This is Silva's appeal.[3]  We note that Silva appeals only the district court's

decision to impose sanctions and not the underlying grant of summary judgment.

## II.    STANDARD OF REVIEW

We review a district court's imposition of sanctions for abuse of discretion.

*See Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009) (applying abuse of

discretion standard to review sanctions imposed under Rule 11 and 28 U.S.C.

§ 1927); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (applying abuse

of discretion standard to review sanctions imposed pursuant to district court's

inherent power).  "An abuse of discretion occurs if the judge fails to apply the

proper legal standard or to follow proper procedures in making the determination

or bases an award . . . upon findings of fact that are clearly erroneous." *Mut. Servs.*

*Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004) (internal

quotation marks omitted).  "Under clear error review, we will reverse only if after

viewing all the evidence, we are left with the definite and firm conviction that a

---

[3] After filing a notice of appeal, Silva filed a motion in our Court to stay the appeal pending our en banc decision in *Slater*.  We granted the motion.  The parties submitted their briefs once the *Slater* en banc decision issued.

mistake has been committed." *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015) (internal quotation marks omitted).

## III.   DISCUSSION

Silva contends that the district court abused its discretion when it imposed sanctions against him and his attorneys pursuant to its inherent power, 28 U.S.C. § 1927, and Federal Rule of Civil Procedure 11.  Before addressing whether the district court abused its discretion in imposing sanctions, we pause to discuss our Circuit's law regarding judicial estoppel after our decision in *Slater*.

Judicial estoppel applies when (1) a party takes an inconsistent position under oath in a separate proceeding, and (2) the party's inconsistent positions were "calculated to make a mockery of the judicial system." *Slater*, 871 F.3d at 1181 (internal quotation marks omitted).   In *Slater*, we addressed how judicial estoppel applies when a plaintiff brings a civil claim that he failed to disclose in his bankruptcy proceeding.  *Id.* at 1176.  We acknowledged that such a plaintiff has taken an inconsistent position "by asserting in the civil lawsuit that he has a claim against the defendant while denying under oath in the bankruptcy proceeding that the claim exists." *Id.*  We focused our analysis in *Slater* on the evidence required for a court to infer that the plaintiff intended to make a mockery of the judicial system. *Id.*

8

Prior to *Slater*, we endorsed an inference that a plaintiff who failed to disclose a civil claim intended to make a mockery of the judicial system because she knew about the existence of her civil claim and possessed a motive to conceal it. *Id.* at 1184. We treated as irrelevant the fact that the plaintiff subsequently corrected her bankruptcy disclosures because a party should not be permitted to "'back-up, re-open the bankruptcy case, and amend his bankruptcy filings' after [her] adversary raises judicial estoppel." *Id.* at 1183 (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Under our prior precedent, then, a defendant could establish as a matter of law that the plaintiff intended to make a mockery of the judicial system simply by showing that she failed to disclose a civil claim in her bankruptcy proceedings; a court was not required to consider all of the circumstances of the particular case to determine whether the plaintiff acted with the requisite intent. *Id.* at 1184.

In *Slater* we overruled our precedent that "permit[ted] a district court to infer intent to misuse the courts without considering the individual plaintiff and the circumstances surrounding the nondisclosure." *Id.* at 1177. We held instead that to find that a plaintiff who failed to disclose a civil claim in his bankruptcy proceedings intended to make a mockery of the judicial system, a district court must consider "all the facts and circumstances of the particular case" including:

> the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the

9

plaintiff told his bankruptcy attorney about the civil claims before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the civil lawsuit or claims before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Id.* at 1185. We explained that it was inappropriate to infer in all cases that a debtor who failed to disclose a lawsuit intended to make a mockery of the judicial system because less sophisticated debtors "may not realize that a pending lawsuit . . . must be disclosed" in bankruptcy. *Id.* at 1186.[4]

With *Slater*'s holding in mind, we turn to whether the district court erred in imposing sanctions in this case. A district court may impose sanctions pursuant to its inherent authority, 28 U.S.C. § 1927, and under Federal Rule of Civil Procedure 11 if the plaintiff acted in bad faith by pursuing a claim that was plainly barred by existing precedent and there was no reasonable chance of success in changing the law.

If these conditions are met, a district court may impose sanctions pursuant to its inherent authority because a court is permitted to exercise its inherent power to impose sanctions when it finds that a party litigated a case in bad faith. *Barnes*, 158 F.3d at 1214. We have recognized that a finding of bad faith is warranted when "an attorney knowingly or recklessly raises a frivolous argument." *Id.*

---

[4] Of course, a factfinder ultimately "may determine that a plaintiff's testimony that he misunderstood the disclosure obligations is not credible." *Slater*, 871 F.3d at 1186 n.12.

10

(internal quotation marks omitted); *see In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) (recognizing that "continually advancing [a] groundless and patently frivolous litigation is tantamount to bad faith" (internal quotation marks omitted)).

Likewise, when a plaintiff pursues a frivolous claim in bad faith, a district court is permitted to award sanctions against her attorney under 28 U.S.C. § 1927. A district court may impose sanctions under § 1927 against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. An attorney unreasonably and vexatiously multiplies the proceedings when he "willfully abuse[s] the judicial process by conduct tantamount to bad faith." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (internal quotation marks omitted). And an attorney acts in bad faith when she "knowingly or recklessly pursues a frivolous claim." *Id.*

A district court may also impose sanctions pursuant to Rule 11 when a party files a legal action that is based on a legal theory that has no reasonable chance of success. Rule 11 provides that when an attorney files a pleading, written motion, or other paper, he certifies that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; "the claims . . . are

warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and there is "evidentiary support" for the factual contentions. Fed. R. Civ. P. 11(b)(1)-(3). A district court thus may impose sanctions under Rule 11 when a party files a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success . . . ; [or] (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

The magistrate judge found—and the district court accepted—that it was appropriate to impose sanctions in this case because "Eleventh Circuit case law is clear that Silva's failure to disclose the overtime wages claim in the bankruptcy proceedings precluded him from bringing this action." Doc. 61 at 15 n.12. The district court concluded that our judicial estoppel precedent foreclosed Silva's FLSA claim and thus that his action was frivolous. By filing a frivolous lawsuit, Silva and his attorneys acted in bad faith, making sanctions appropriate.

But the magistrate judge and the district court relied on our pre-*Slater* cases, which held that a plaintiff who failed to disclose a civil action in bankruptcy proceedings necessarily acted with an intent to make a mockery of the judicial system because he had a potential motive to conceal a claim. In *Slater* we overruled this precedent and rejected the argument that judicial estoppel *must* be applied when a plaintiff failed to disclose a civil claim in his bankruptcy

12

proceeding.  We held that a district court must consider all the facts and circumstances of the case to find that the plaintiff acted with the requisite intent to make a mockery of the judicial system.  *See Slater*, 871 F.3d at 1185.

In light of *Slater*, we are left with a definite and firm conviction that the district court made a mistake in determining that Silva and his attorneys took a frivolous position and had no reasonable chance of success in arguing that judicial estoppel did not apply.[5]  As *Slater* illustrates, Silva and his attorneys had reasonable arguments that judicial estoppel should not apply given, among other things, Silva's lack of sophistication and the fact that the bankruptcy court permitted Silva to amend his bankruptcy schedules to add the FLSA claim.  *See Slater*, 871 F.3d at 1185 (identifying "the plaintiff's level of sophistication" and "whether . . . the plaintiff corrected the disclosures" as factors relevant to whether the plaintiff intended to make a mockery of the judicial system).  Because the facts do not support that Silva and his attorneys acted in bad faith or took legal action

---

[5] The defendants argue that because Silva appealed only the imposition of sanctions, not the grant of summary judgment, he may not relitigate whether the district court properly applied judicial estoppel.  We agree that the question of whether the district court properly granted summary judgment based on judicial estoppel is not before us in this appeal.  But to review the sanctions order, we must assess whether the district court clearly erred in finding that Silva and his attorneys acted in bad faith and for an improper purpose when they brought the FLSA claim.  This question requires us to consider whether it was frivolous for Silva to assert that judicial estoppel did not apply.  *See Schwartz*, 341 F.3d at 1225; *Baker*, 158 F.3d at 524.  And although *Slater* was issued after the district court imposed sanctions, *Slater*'s reasoning is relevant to determining whether Silva took a reasonable position in the litigation when he contended that judicial estoppel should not apply.

that had no reasonable chance of success, we conclude that the district court abused its discretion in imposing sanctions.[6]

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's award of sanctions to the defendants.

**REVERSED.**

---

[6] The district court found in the alternative that even if judicial estoppel did not apply, Silva and his attorneys acted in bad faith because Silva lacked standing to assert the FLSA claim. But this finding was also clearly erroneous because the district court misunderstood a debtor's standing to pursue a civil claim. It is true that in a Chapter 7 bankruptcy generally only the trustee, not the debtor, has standing to pursue a civil legal claim. *See Slater*, 871 F.3d at 1180. But in a Chapter 13 bankruptcy, the debtor retains standing to continue to pursue the civil claim. *See id.* (citing 11 U.S.C. § 1303; Fed. R. Bankr. P. 6009)).

14